UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHERINE BRUGMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-01301-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Katherine Brugman was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.   For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 16-1), and in Defendant's Response to Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 23-1).   Together, these statements provide a fair description of the record before the Court.   Specific facts will

---

[1]    Kilolo Kijakazi is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

be discussed as needed to address the parties' arguments.

Plaintiff, who was born on September 11, 1979, protectively filed her application for benefits *pro se* on May 12, 2014. She alleged disability beginning November 20, 2013 due to migraines, bipolar disorder, general anxiety disorder, PTSD, and depression. Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

An initial hearing was held on August 17, 2016 and a supplementary hearing was held on February 1, 2017. Plaintiff, who appeared *pro se*, a vocational expert ("VE"), and Kelsey Hayes, Plaintiff's Integrated Health Specialist, testified at the hearings. By decision dated March 10, 2017, the ALJ denied Plaintiff's application. At that point, attorney Donald L. Kohl entered an appearance for Plaintiff. Plaintiff appealed to the SSA's Appeals Council, providing additional evidence—records from SSM Behavioral Health Medicine dated June 12, 2015 to June 15, 2015 which document Plaintiff's suicide attempt and subsequent psychiatric hospitalization and a letter from Plaintiff's treating physician, psychiatrist Greg Mattingly, M.D. The Appeals Council denied her request for review. Plaintiff appealed the denial to this Court, which remanded the case on March 26, 2019.

This Court found the Appeals Council erred when it determined that the new evidence did not create a reasonable probability of a different decision. The Court held the ALJ's finding that Plaintiff's depression was situational was inconsistent with the medical evidence on the record. Tr. 888. The Court noted that the only opinion

2

evidence considered by the ALJ in 2017 was that of State agency medical expert Dr. Watson, and "it is questionable whether the ALJ's RFC is consistent with Dr. Watson's opinion." Tr. 886. Furthermore, Dr. Watson's opinion predated Dr. Mattingly's opinion, as well as Plaintiff's psychiatric hospitalization, and as such he was unable to consider that evidence.

A third hearing was held on November 4, 2019. Plaintiff, represented by counsel, a VE, and Dr. Jeffrey N. Andert, a clinical psychologist and medical expert, testified at the hearing. Plaintiff's application was again denied on December 26, 2019. The ALJ determined Plaintiff had the following severe impairments: pulmonary emphysema, chronic obstructive pulmonary disease ("COPD"), headaches, obesity, bipolar disorder, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. The ALJ also determined Plaintiff has the non-severe impairments of congenital hypothyroidism without goiter, poor bladder control, a history of toe fractures, and mild tendinopathy of the right knee.

The ALJ found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404. In making that determination, the ALJ determined Plaintiff's mental impairments do not meet or medically equal the criteria of listings 12.04, 12.06, or 12.15. The ALJ noted that she considered the four areas of mental functioning set out in the Commissioner's regulations for evaluating mental disorders, also known as the "paragraph B" criteria. Relying on Plaintiff's function reports and the medical evidence

3

of record, the ALJ found that Plaintiff had "mild" limitations in understanding, remembering or applying information.  The ALJ found that Plaintiff had "moderate" limitations in the interacting with others, concentrating, persisting, or maintaining pace, and adaption and self-management areas of mental functioning.

In determining Plaintiff had only mild limitations in understanding, remembering, or applying information, the ALJ considered Plaintiff's testimony that she could pay bills, count change, and balance a checkbook.  Plaintiff also recently earned an online Associate's degree in accounting.  The ALJ also noted that during the hearing, Plaintiff could understand and respond to questions asked with no signs of significant cognitive defect.  The ALJ found nothing persuasive in the record indicating more than a mild limitation.

The ALJ next found Plaintiff had a moderate limitation in interacting with others. Plaintiff goes out with her friends around every two weeks and has never been fired from a job for an inability to interact with others.  In determining Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ noted Plaintiff shopped online and played billiards, which require "significant" concentration.  Tr. 712. Plaintiff also stated she could follow written instructions well and she finishes what she starts, although she only follows spoken instructions "okay."  *Id*.  Finally, the ALJ considered Plaintiff's limitations in adaption and self-management.  In determining Plaintiff had no more than a moderate limitation, the ALJ noted that Plaintiff could drive and go out alone, as long as it was not raining or snowing, and Plaintiff's mental status

examinations are often unremarkable.

The ALJ also determined that the "paragraph C" criteria are not satisfied because "[t]he record does not contain any persuasive evidence that the claimant requires a structured living arrangement or is unable to function outside of her home." Tr. 712.

Because the ALJ found that Plaintiff's medically determinable mental impairment caused no more than "moderate" limitations in any of the functional areas, the ALJ concluded that Plaintiff's mental impairment was non-severe. The ALJ noted that the limitations at this step of the analysis (determining the severity of impairments) were "not a residual functional capacity [RFC] assessment," but that the RFC assessment described later in her opinion "reflect[ed] the degree of limitation the [ALJ] ha[d] found in the 'paragraph B' mental function analysis." Tr. 712.

The ALJ concluded that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations. Next, the ALJ found that Plaintiff had the RFC to perform less than the full range of "light" work, as defined by the Commissioner's regulations, except that she:

> should never be required to work in proximity to concentrated levels of dust, odors, fumes or other pulmonary irritants. She should never be exposed to vibration. She can tolerate no more than moderate noise levels. She can perform simple, routine tasks in a working environment requiring no more than occasional contact with the public. In addition, she should not be required to perform fast-paced production work, but she is capable of performing work measured by end-of-day production requirements.

Tr. 713.

5

Relying on the VE's testimony regarding a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience), the ALJ next found that Plaintiff was not able to perform her past relevant work as a retail clerk, office clerk, or babysitter.  However, the ALJ found, based on the VE's testimony, that a person with Plaintiff's RFC and vocational factors could perform jobs that exist in significant numbers in the national economy, such as bakery worker, bench assembler, or self-service retail clerk.  Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on July 28, 2020.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that: (1) the ALJ failed to accord adequate weight to the opinion of her treating physician, psychiatrist Greg Mattingly, M.D; (2) the ALJ erred in finding Plaintiff's impairments do not meet or equal the criteria of listing 12.04; and (3) the ALJ erred in failing to explicitly consider the opinion of claimant's Integrated Health Specialist, Kelsey Hayes.  Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for an award of benefits.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by

6

substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).   The court "may not reverse merely because substantial evidence would support a contrary outcome.   Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."  *Id*. (citations omitted).   A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.   If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).   A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.   42 U.S.C. § 423(d)(1)(A).   The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.   The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.   If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.   A

7

severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). As noted above, a special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his or her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Medical Opinion**

Plaintiff first claims the ALJ did not accord adequate weight the opinion of Dr. Greg Mattingly. Dr. Mattingly, a psychiatrist, is Plaintiff's treating physician. He

8

submitted a two-page letter to the agency in April of 2017 explaining that he has treated Plaintiff for bipolar depression, underlying generalized anxiety disorder, and posttraumatic stress disorder for three years, and her bipolar depression causes severe limitations that impact her ability to maintain gainful employment. Tr. 1327. He described Plaintiff's symptoms that day: she had a tearful affect, only slept 3-4 hours the previous night, had problems with fatigue and cognitive processing, a "terrible" mood, and helpless feeling. *Id*. Dr. Mattingly explained that Plaintiff is currently proscribed Doxepin, Latuda, Valium, Synthroid, Ativan, and Cymbalta. He noted that "[d]espite aggressive medication management [Plaintiff] has continued to have problems with initial and secondary insomnia, problems with daytime fatigue requiring repeated naps, difficulties with stress tolerance where she tends to emotionally decompensate under only mild to moderately stressful environments, and problems with processing speed and working memory as a result of her problems with depression." *Id*. Dr. Mattingly finally found "[i]n my medical opinion her psychiatric conditions in context with her other medical problems are causing [Plaintiff] to currently be 100% disabled from a psychiatric perspective." Tr. 1328.

  The ALJ afforded "[n]o weight…to Dr. Mattingly's statement that the claimant is '100% disabled from a psychiatric perspective.'" Tr. 716. "Dr. Mattingly's other statements regarding the claimant's symptoms have been considered in combination with the providers['] treatment notes and the record as a whole when determining her residual

9

functional capacity." *Id*. Plaintiff contends that the ALJ did not comply with 20 CFR § 404.1527[2] because she failed to accord adequate weight Dr. Mattingly's opinion.

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2). *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). However, a treating physician's opinion is not inherently entitled to controlling weight. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A "treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely 'opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner.'" *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019, 1023 (8th Cir. 2002)).

---

[2] 20 C.F.R. § 404.1527 applies in this matter because Plaintiff filed her claim before March 27, 2017.

Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source.  20 C.F.R. § 404.1527(c)(2)–(6).  "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so."  *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)).  It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice."  *See Hacker*, 459 F.3d at 936.

The ALJ was entitled to disregard Dr. Mattingly's opinion that Plaintiff is 100% disabled because the determination of whether Plaintiff is disabled is reserved for the Commissioner.  *Stormo*, 377 F.3d at 806.  The rest of Dr. Mattingly's letter contained several observations about Plaintiff: she has insomnia, fatigue, difficulties with stress tolerance, and problems with processing speed and working memory.  The ALJ characterized the remainder of the letter as "statements" rather than "opinions."  Tr. 716.  She noted that these statements were taken into account in forming Plaintiff's RFC.  *Id*.

The Court concludes that the ALJ did not err in declining to assign a weight to the remainder of Dr. Mattingly's letter.  Dr. Mattingly did not frame these statements as medical opinions, and the ALJ adequately explained why she discounted Dr. Mattingly's

11

opinion that Plaintiff is disabled. Furthermore, Dr. Mattingly's letter was supported only by a brief description of Plaintiff's condition the day he wrote his letter and a list of her medications. "[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes." *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016). *See also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). As such, the ALJ's decision to not assign the remainder of Dr. Mattingly's letter a specific weight was not error.

**Listing 12.04**

Plaintiff next claims the ALJ erred in finding her symptoms did not meet or medically equal those described in Listing 12.04. Pursuant to the regulations applicable to Plaintiff's case, a claimant can show her impairment meets or equals the listing in two ways:

> First, a claimant can demonstrate that she suffers from one of the conditions enumerated in the listing, which results in at least two of the paragraph B criteria: (1) "marked restriction" of daily living activities, (2) "marked difficulties in maintaining social functioning," (3) "marked difficulties in maintaining concentration, persistence, or pace," and (4) "[r]epeated episodes of decompensation" of "extended duration." [20 C.F.R. Pt. 404, Subpt. P, App. 1] § 12.04(A), (B). Second, a claimant can show a documented chronic affective disorder resulting in at least one of the paragraph C criteria: extended episodes of decompensation, a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." *Id.* § 12.04(C).

*Myers v. Colvin*, 721 F.3d 521, 525–26 (8th Cir. 2013).

Plaintiff claims she has met both the paragraph B and paragraph C criteria. The ALJ concluded Plaintiff did not meet the paragraph B criteria because she showed at most moderate limitations in all four areas of mental functioning. Plaintiff contends she met the paragraph B criteria because a person who needs the assistance of a counselor once a week to improve hygiene, create healthy coping techniques, and ensure medical and other needs are met "has <u>marked limitations</u>." (ECF No. 16 at 8) (emphasis in original). The Court cannot agree with Plaintiff's assertion that weekly sessions with a counselor are necessarily evidence of marked limitations in any of the four categories of functioning. As described above, the ALJ considered Plaintiff's Function Report and that she had recently completed an online Associate's degree in accounting in determining Plaintiff had only mild or moderate limitations in the areas of mental functioning. The ALJ also noted Plaintiff regularly goes out with her friends and plays billiards and often has unremarkable mental status examinations. The ALJ's determination that Plaintiff had at most moderate limitations was supported by substantial evidence in the record.

Plaintiff also claims she met the paragraph C criteria because of her reliance on a counselor, her inability to leave her bedroom except to use the bathroom or go to the kitchen and fear of driving, and the fact that she needs reminders to engage in self-care and take medications. First, Plaintiff's assertion in her brief that she is unable to leave her bedroom is not supported by the record—including Plaintiff's own function report.

13

Plaintiff noted in her function report that she does household chores and goes out with friends regularly, and treatment notes from Plaintiff's hospital stay in 2015 indicate her husband stated she is "ready to jump up and get ready if [he] mentions casino or bingo." Tr. 714.  The ALJ concluded Plaintiff had not met the paragraph C criteria because she did not show she either requires a structured living arrangement or is unable to function outside of her home.  It is unclear which of the three paragraph C criteria Plaintiff argues she meets.  However, substantial evidence supports the ALJ's determination that Plaintiff does not meet any of the criteria.

First, there is no evidence that Plaintiff meets the criteria in paragraph C(1) or C(3) because she does not have repeated episodes of decompensation or a history of one or more years of an inability to function outside a highly supportive living arrangement. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C)(1), (3) (2014).[3]  Next, Plaintiff has not shown that she meets the criteria in paragraph C(2) because she does not have such marginal adjustment that a minimal increase in mental demands or a change in her environment would cause her to decompensate.  *Id*. § 12.04(C)(2).  Plaintiff has admitted that she leaves the house every other week to socialize with friends by playing billiards.  The testimony of the consulting medical expert and clinical psychologist Dr. Andert, further supports the ALJ's conclusion that Plaintiff failed to meet paragraph C.

---

[3]     Plaintiff was hospitalized once, in June of 2015 for three days following a suicide attempt, but she has not had any subsequent psychiatric hospitalizations or required any highly supportive living arrangement.

Dr. Andert based his opinion on a full review of Plaintiff's medical records. Tr. 781. Dr. Andert opined that Plaintiff could engage in the full range of simple work with occasional interactions with the public. The ALJ afforded Dr. Andert's opinion great weight, a determination Plaintiff does not challenge. The Court concludes the ALJ's decision is supported by substantial evidence.

**Non-Medical Opinion**

Finally, Plaintiff claims the ALJ erred because she did not discuss the opinion of Kelsey Hayes. Ms. Hayes is an Integrated Health Specialist at Crider Health Center who provided Plaintiff with services. She saw Plaintiff "at least once a week" to discuss Plaintiff's medical needs and connect her to resources. Tr. 191. Ms. Hayes has a master's degree in clinical mental counselling. She testified at Plaintiff's second administrative hearing and completed a Behavioral Assessment about Plaintiff. Tr. 665-97. Ms. Hayes began seeing Plaintiff in October of 2015 and continued to see her through Plaintiff's second hearing in front of the ALJ in February of 2017.

When determining the RFC, the Commissioner must consider all relevant medical and other evidence, including descriptions and observations of the limitations by both the plaintiff and others such as family or friends. 20 C.F.R. § 404.1545(a)(3). To the extent the statements contain opinions, the ALJ "generally should explain the weight given to [nonmedical source] opinions." 20 C.F.R. § 404.1527(f)(2).[4] However, the

---

[4]   Ms. Hayes is not a medical source. A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of a practice

15

Eighth Circuit "has not always insisted that the ALJ explicitly explain its reasons for discrediting a third-party's statements about the claimant's condition." *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011).   In *Buckner*, the Eighth Circuit considered whether an ALJ erred by failing to explicitly address the plaintiff's girlfriend's statements.   Although the court could not "determine from the record whether the ALJ considered her statements at all," remand was not required because "the same evidence that the ALJ referred to in discrediting [the plaintiff's] claims also discredits the girlfriend's claims." *Id*. at 560.

In *Nowling v. Colvin*, the Eighth Circuit remanded a case because the ALJ failed to consider the testimony of the plaintiff's sister-in-law.   813 F.3d 1110, 1121–22 (8th Cir. 2016).   Although "such an omission need not lead our court to reverse an ALJ's otherwise-supported decision…[w]hen coupled with other 'errors and uncertainties in the opinion,' however, we have remanded for reconsideration and clarification by the agency."   *Id*. at 1121 (quoting *Willcockson v. Astrue,* 540 F.3d 878, 880 (8th Cir. 2008).   *But see Brinley v. Berryhill*, 732 F. App'x 461, 466 (7th Cir. 2018) ("Under [20 C.F.R. § 404.1527(f)(2)], an ALJ should explain the weight he gives to nonmedical opinions, or at least say enough to allow a claimant to understand his reasoning, including the role the

---

permitted under State or Federal law…." 20 C.F.R. § 404.1502(d).   Nothing in the record indicates that Ms. Hayes is a licensed healthcare worker, and Defendant identifies Ms. Hayes as a nonmedical source, which Plaintiff did not contest.   (Doc. No. 23 at 10).   Moreover, in her testimony before the ALJ, Ms. Hayes appeared to state she was not a licensed healthcare worker.   Tr. 961.   However, the transcript indicated some of Ms. Hayes' testimony was inaudible.   *Id*.

16

nonmedical evidence plays in the decision."). In addition to failing to consider the testimony from the sister-in-law, the *Nowling* ALJ also gave improper weight to the treating source's opinion and failed to consider the plaintiff's extensive treatment records from her licensed clinical social worker. *Nowling*, 813 F.3d at 1122–24.

Ms. Hayes diagnosed Plaintiff with bipolar I disorder and generalized anxiety disorder and opined that she requires a "rehabilitation level of support," including regular monitoring from a psychiatrist, semi-regular visits with her counselor, and weekly visits from a caseworker. Ms. Hayes further found Plaintiff "requires assistance improving her personal hygiene," and creating healthy coping techniques. Tr. 690. However, Ms. Hayes also noted Plaintiff's symptoms responded well to medication, her mood was "normal," as well as "depressed," "irritable," and "hopeless[]," over the last six months and her generalized anxiety was controlled in the same time period. *Id*. The ALJ made no mention of Ms. Hayes' testimony or the Behavioral Assessment.[5] In light of the mild findings in Ms. Hayes' testimony, any error in failing to consider her testimony was harmless. *Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir.2008) ("There is no indication

---

[5] Ms. Hayes' testimony was discussed in the prior decision. However, this Court remanded the case to the Appeals Council, which vacated the prior decision and remanded the case to an ALJ for further proceedings. Tr. 914. Although an ALJ may incorporate aspects of a previous decision by reference, the ALJ did not incorporate any aspects of the prior decision in the current decision. *See Wilson v. Comm'r, Soc. Sec. Admin.*, No. 3:15-CV-00691-HZ, 2016 WL 1598867, at *5 (D. Or. Apr. 20, 2016) ("When faced with a remand order from the Appeals Council, an ALJ sometimes incorporates by reference certain findings from the prior decision.")

that the ALJ would have decided differently ... and any error by the ALJ was therefore harmless.")

Furthermore, the ALJ's opinion was thoroughly supported by the medical and other evidence contained in the record. The ALJ considered function reports prepared by both Plaintiff and her mother. The reports stated that Plaintiff mostly stayed in bed all day, but also that she got her son off to school in the mornings, did not have significant difficulty tending to her own personal grooming, and prepared meals and performed chores. Tr. 714. Plaintiff further stated she went out with friends every other week to play pool. Tr. 716. The ALJ concluded that this level of independent functioning was inconsistent with a finding of a disability.

The ALJ also considered treatment notes from a hospitalization that occurred after an overdose attempt. The notes indicated Plaintiff's husband said she was constantly in bed and drank up to twelve beers and several shots of liquor every Friday. Plaintiff's husband also stated she was willing to leave the house to go to the casino or to play bingo. Tr. 714. The treatment records from Plaintiff's hospitalization noted her "physical and mental status examinations were unremarkable the day before discharge and on the day of discharge." *Id.*

The ALJ further relied upon the opinion evidence of four experts who evaluated Plaintiff's medical history for the agency: Charles Watson, Psy.D., Kim Dempsy, Psy.D., Paul Spence, M.D., and Jeffrey Andert, Ph.D. The agency evaluators had access to Plaintiff's Crider records, including Ms. Hayes' Behavioral Assessment, and Dr. Watson

18

noted Plaintiff was receiving counseling through Crider.  Tr. 202, 715.  In particular, the ALJ afforded great weight to Dr. Andert's opinion, as he was able to conduct a thorough review of Plaintiff's medical history, has extensive knowledge of the agency's rules, and the limitations contained in his RFC finding are sufficient to account for Plaintiff's verifiable symptoms.  Tr. 716.  Dr. Andert's opinion addresses the same diagnoses and limitations on which Ms. Hayes opined.   He found Plaintiff had moderate to severe symptoms of bipolar disorder and to a lesser extent, an unspecified anxiety disorder and some PTSD.   He states that there are references to borderline personality disorder and a cognitive disorder in the record, but little evidence to support the diagnosis.   Dr. Andert further found Plaintiff had the "ability to tend to her activities of daily living and household care."   *Id.*   The ALJ accounted for Plaintiff's moderate mental limitations in the RFC by limiting Plaintiff to only "simple, routine tasks in a working environment requiring no more than occasional contact with the public" and no "fast-paced production work."   Tr. 713.   In light of the extensive testimony upon which the ALJ relied and the lack of other errors in the decision, the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole, and the ALJ's failure to explicitly mention Ms. Hayes' testimony does not warrant reversal.   Although the record could also support a different conclusion, the Court cannot say that the ALJ's decision was outside the zone of choice.

19

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of March, 2022.